PROSKAUER ROSE LLP
Jerold D. Jacobson
Andrew E. Rice
11 Times Square
New York, New York 10036
(212) 969-3000
*Attorneys for Defendant*
*Jewish Child Care Association, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                  :
SHENIECE CLARK,                                                   :
                                                                  :
                Plaintiff,                                 :
                                                                  :
                v.                                         :  12 Civ. 9372 (KMK) (LMS)
                                                                  :
                                                                  :
JEWISH CHILD CARE ASSOCIATION, INC.,                              :
                                                                  :
                Defendant.                                 :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORTIES .................................................................................................................ii

PRELIMINARY STATEMENT .........................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................................2

    JCCA's Operations ..........................................................................................................2

    Clark's Employment with JCCA ....................................................................................2

    Clark's Shoulder Injury and Leaves of Absence ............................................................3

    Clark's Alleged Disability and Requests for Accommodation.......................................3

    Clark's Termination and Preceding Events ....................................................................4

    Clark's Challenge to the OCFS Findings........................................................................5

    Clark's Complaint to the New York State Division of Human Rights...........................6

    Clark's Complaint for Employment Discrimination in this Action................................7

    Clark's Discrimination Claims .......................................................................................7

    Clark's Retaliation Claims..............................................................................................7

ARGUMENT .......................................................................................................................................8

JCCA IS ENTITLED TO SUMMARY
JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS..........................................................................8

    I.    CLARK'S CLAIM FOR DISABILITY DISCRIMINATION BASED
         ON HER TERMINATION FAILS AS A MATTER OF LAW. ...............................9

         A.    Clark Cannot Establish a Prima Facie
               Case of Discriminatory Discharge.................................................................9

         B.    JCCA Terminated Clark's Employment Due to the
               OCFS Findings Against Her – a Legitimate, Non-Discriminatory
               Reason – and There Is No Evidence of Pretext ............................................10

    II.    CLARK'S RETALIATION CLAIM FAILS AS A MATTER OF LAW .................12

    III.    CLARK'S FAILURE TO ACCOMMODATE CLAIM IS MERITLESS ...............14

CONCLUSION..................................................................................................................................16


# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................8

*Deutsche Asset Mgmt., Inc. v. Callaghan*,
    No. 01 Civ. 4426, 2004 U.S. Dist. LEXIS 5945 (S.D.N.Y. Apr. 7, 2004)................8

*Godfrey v. Eastman Kodak Co.*,
    No. 89 Civ. 7489, 1991 U.S. Dist. LEXIS 4803 (S.D.N.Y. Apr. 10, 1991)..............8

*Graves v. Finch Pruyn & Co.*,
    353 F. App'x 558 (2d Cir. 2009) ............................................................................14

*Gross v. FBL Financial Services, Inc.*,
    557 U.S. 167 (2009)................................................................................................12

*Jackan v. New York State DOL*,
    205 F.3d 562 (2d Cir 2000).....................................................................................14

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)..................................................................................................9

*Rojo v. Deutsche Bank*,
    No. 06 Civ. 13574, 2008 U.S. Dist. LEXIS 94007 (S.D.N.Y. Nov. 5, 2008),
    *aff'd*, 487 F. App'x 586 (2d Cir. 2012).....................................................................8

*Schanfield v. Sojitz Corp. of Am.*,
    663 F. Supp. 2d 305 (S.D.N.Y. 2009).....................................................................11

*Sesay-Harrell v. New York City Dep't of Homeless Servs.*,
    No. 12 Civ. 925, 2013 U.S. Dist. LEXIS 170160 (S.D.N.Y. Dec. 2, 2013)............13

*Wernick v. Fed. Reserve Bank of N.Y.*,
    91 F.3d 379 (2d Cir. 1996).......................................................................................9

*Widomski v. State Univ. of N.Y. at Orange*,
    933 F. Supp. 2d 534 (S.D.N.Y. 2013), *aff'd*, 748 F.3d 471 (2d Cir. 2014) ............12

**STATUTES**

42 U.S.C. § 2000e-5(e)(1)................................................................................................15

42 U.S.C. § 12117(a) .......................................................................................................15

Americans with Disabilities Act ............................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ..................................................................................................................8

**PRELIMINARY STATEMENT**

Defendant Jewish Child Care Association, Inc. ("JCCA" or "Defendant") terminated the employment of Plaintiff Sheniece Clark ("Clark" or "Plaintiff") because the New York State Office of Children and Family Services ("OCFS") twice indicated Clark for abuse, neglect or maltreatment of a child in her care in the course of her employment at JCCA. The undisputed facts show that JCCA terminated Clark's employment for this legitimate, non-discriminatory, and non-retaliatory reason. Accordingly, summary judgment should be granted on Plaintiff's claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA").

Indeed, Clark cannot even establish a *prima facie* case of discrimination or retaliation because she has no evidence that JCCA terminated her employment because of her alleged disability or because she engaged in protected activity under the ADA. But even if Clark could adduce such evidence, her claims fail because Clark cannot demonstrate that JCCA's undisputed proffered reason is pretextual.

Likewise, Clark's claims that JCCA failed to accommodate her alleged disability are meritless. Clark's own deposition testimony established that she did not even need any accommodation. In any event, Clark identified only two alleged requests that she made within the limitations period. Clark admitted that JCCA granted one such request on the *very same day* that she made it. The second alleged request – for transfer to a totally different position – is unreasonable as a matter of law where there is no evidence that there was a vacancy for the position.

Based on the undisputed facts, therefore, JCCA is entitled to summary judgment on all of Clark's claims.

1

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**JCCA's Operations**

JCCA is a not-for-profit organization providing a full range of social and residential services to children and their families in the New York metropolitan area. (Declaration of Steven Mayo ("Mayo Decl.") ¶ 2.) JCCA's residential treatment center in Pleasantville, New York – the Pleasantville Cottage School (although it is not a school) ("PCS") – serves children at risk to themselves or others, who cannot live at home. (Mayo Decl. ¶ 3.) OCFS is a government agency that, among other things, oversees and regulates child services programs like PCS, including investigations of complaints of child abuse and maltreatment. (Mayo Decl. ¶ 5; Clark Tr. 120:3-19.[1])

**Clark's Employment with JCCA**

Clark began working for JCCA in or around April 2003 as an on-call switchboard operator. (Compl. ¶ E.1.; Clark Tr. 14:9-11, 63:8-14.) Clark began working as a full-time milieu counselor (child care employee) for JCCA in April 2006. (Clark Tr. 63:15-21, 64:10-24; Mayo Decl. ¶ 4.) As a milieu counselor, Clark worked in the residential cottages at PCS and was responsible for the everyday needs and activities of the residents, including, among other things, safety, supervision and accountability of residents, upkeep of the cottage, escorting residents to appointments, and ensuring that residents were doing what they needed to do. (Clark Tr. 79:4-19, 80:14-82:20; Rice Decl. Ex. E; Mayo Decl. ¶ 4.) The residents for whom Clark was responsible as a milieu counselor were adolescent females. (Clark Tr. 79:23-80:13.) Clark

---

[1] References to excerpts from the deposition transcript of Sheniece Clark, which are attached to the Declaration of Andrew E. Rice, Esq. ("Rice Decl.") as Exhibit A, are noted as "Clark Tr. __". References to the Complaint, which is attached to the Rice Declaration as Exhibit B, are noted as "Compl." All other exhibits attached to the Rice Declaration will be referred to as "Rice Decl. Ex. ___."

worked in several different PCS cottages over the course of her employment as a milieu counselor at JCCA. (Clark Tr. 71:13-15, 73:7-10, 73:22-74:11, 76:2-77:9, 77:24-78:13.)

**Clark's Shoulder Injury and Leaves of Absence**

Clark went on leave on two occasions while employed at JCCA. (Clark Tr. 95:21-23, 99:23-100:4.) Clark took a workers' compensation disability leave from May 3, 2008 through August 2008 due to a torn ligament in her right shoulder. (Compl. ¶ E.2.; Clark Tr. 96:9-97:3.)

Clark went on leave again after March 30, 2011 when she reinjured her right shoulder, and was returned to work at the end of the leave, on August 9, 2011. (Clark Tr. 49:20-23, 60:19-20, 77:16-18, 97:14-98:20.) When Clark returned to work in August 2011, it was because she "felt okay," and it was not against her doctor's recommendation or wishes. (Clark Tr. 110:16-111:2.) Clark's doctor did not place any restrictions on her when she returned to work in August 2011. (Clark Tr. 205:5-8.)

**Clark's Alleged Disability and Requests for Accommodation**

According to Clark, she first became disabled when she injured her right shoulder on May 3, 2008. (Clark Tr. 101:2-12.) Clark treated with Dr. Faierman concerning her May 2008 shoulder injury about every six weeks thereafter. (Clark. Tr. 193:10-21.) Clark was experiencing increased right shoulder and neck pain for several months prior to March 30, 2011, when she reinjured her right shoulder. (Clark Tr. 194:3-17, 195:7-10.)

Clark claims to have sought various accommodations for her disability and to have reported allegedly unsafe working conditions in 2008 and in 2010. (Plaintiff's Objections and Responses to Defendant's Interrogatories (Rice Decl. Ex. L), Answer No. 12.) At her deposition,

3

Clark testified that she sought a change in her schedule in order to go to physical therapy and to avoid dangerous situations. (Clark Tr. 39:23-40:5.) Clark further testified that she sought a transfer back to the switchboard as an accommodation, starting in 2008, in 2010 and again in 2011 before she went back out on leave after re-injuring her shoulder, but admitted that she did not have any documents reflecting such requests. (Clark Tr. 42:3-19.)

Clark requested a transfer out of Cottage 16 in or around early 2011, before her leave, and the request was granted that same day with assistance from JCCA Senior Human Resources Associate Michelle Borges. (Clark Tr. 76:2-77:15, 90:23-91:2; Mayo Decl. ¶ 7.)

Clark admitted that she was able to do all of the job duties in the JCCA Milieu Counselor Job Description, except: (i) she attended briefings and treatment conference meetings only as assigned by the supervisor of the Cottage (rather than all such briefings or meetings); (ii) she and the other milieu counselors did not do the residents' hair; and (iii) she only took residents out with permission from the supervisor and consent from the residents' legal guardians. (Clark Tr. 82:21-83:9.)

Clark did not request any accommodation upon her return to work in August 2011. (Clark Tr. 205:5-17.)

**Clark's Termination and Preceding Events**

In 2009, OCFS indicated Clark in a report of abuse and neglect concerning an incident in late April 2009 involving a resident in her care. (Clark Tr. 120:20-121:9.) OCFS concluded that Clark had abused the resident despite having interviewed Clark in connection with the April 2009 incident. (Clark Tr. 128:5-7, 128:16-19.) JCCA placed a disciplinary notice in Clark's personnel file concerning the 2009 OCFS indication stating that it was "a final warning and in

4

the event that another incident of a similar nature occurs, [her] employment will be terminated." (Clark Tr. 135:25-136:19; Rice Decl. Ex. F.)

OCFS indicated Clark for abuse of a resident for a second time in 2011, concerning an incident on March 14, 2011. (Clark Tr. 150:7-12.) Clark did not fill out a critical incident report concerning the March 14, 2011 incident despite the fact that it was her responsibility to document any such incident. (Clark Tr. 156:21-23, 157:12-15, 221:20-222:18.) According to Clark, Ms. Evensen (a JCCA social worker) and Ms. Fazio (JCCA Director of Campus Life) reported the March 14, 2011 incident to OCFS after the resident-victim reported the incident to Ms. Evensen on June 1, 2011. (Clark Tr. 159:25-161:3.) Clark admitted that upon learning of the incident, Ms. Evensen was mandated to report the incident to OCFS. (Clark Tr. 161:4-8.)

JCCA terminated Clark's employment on August 11, 2011. (Clark Tr. 208:10-15.) Clark had already returned from her leave when she was notified of her termination. (Clark Tr. 252:6-9.) As Clark admitted, at the time of her termination, there were two OCFS indications against her. (Clark Tr. 46:22-25.) JCCA notified Clark that she was terminated because of the second OCFS indication against her, and this is reflected in several JCCA documents. (Compl. ¶ E.5; Clark Tr. 207:11-23, 208:16-18, 208:24-210:9, 216:11-19; Rice Decl. Exs. H-J.) Clark admitted that JCCA never told her that there was any other reason for her termination. (Clark Tr. 210:10-13, 216:11-19.)

**Clark's Challenge to the OCFS Findings**

After her termination, Clark requested that OCFS expunge the indications against her. (Clark Tr. 253:6-9.) In March 2010, OCFS had already upheld its 2009 indication against Clark

5

after an Administrative Review, determining that there was a "fair preponderance of evidence to Retain the report." (Clark Tr. 149:9-150:6; Rice Decl. Ex. G.)

Nevertheless, a hearing was scheduled by OCFS for January 6, 2012, but the hearing was never held. (Clark Tr. 260:13-22.) The OCFS Administrative Law Judge found that OCFS did not meet its burden to prove that Clark committed the alleged acts of neglect because OCFS counsel, prior to the hearing, informed the judge that OCFS would not present any evidence at the hearing. (Clark Tr. 261:19-263:8; Rice Decl. Ex. K.) Clark admitted that she does not know why OCFS chose not to present evidence at the hearing. (Clark Tr. 263:16-18.)

**Clark's Complaint to the New York State Division of Human Rights**

Clark filed a complaint with the New York State Division of Human Rights ("NYSDHR") on November 22, 2011. (Rice Decl. Ex. C; Clark Tr. 33:19-35:23.) Clark's complaint to the NYSDHR was the only complaint or charge that she ever filed with any agency in connection with her employment at JCCA. (Clark Tr. 50:24-51:7.)

The NYSDHR dismissed Clark's complaint, finding that "[t]he evidence gathered during the course of the investigation [was] not sufficient to support that Complainant was discriminated against by Respondent [JCCA] based on her disability (Shoulder injury) and/or retaliation." (Rice Decl. Ex. D.) The NYSDHR also concluded that Clark "was terminated as a result of having two (2) child abuse investigations against her." (*Id.*)

Clark's NYSDHR complaint was cross-filed with the U.S. Equal Employment Opportunity Commission, which adopted the NYSDHR's findings and issued Clark a dismissal and notice of right to sue in September 2012. (Clark Tr. 62:9-15.)

**Clark's Complaint for Employment Discrimination in this Action**

In this action, Clark asserts claims – solely under the ADA – for discriminatory termination of employment, failure to accommodate her disability, and retaliation. (Compl. at 1, ¶ II.A; Clark Tr. 250:19-25, 251:2-12.) Clark's Complaint for Employment Discrimination in this action does not allege retaliation on the basis of a separate complaint filed by Clark's family member against JCCA. (Compl. § II.E.)

**Clark's Discrimination Claims**

Clark testified that the only reason that her termination was discriminatory was because JCCA notified OCFS of the allegation against her while she was out on disability leave and did not notify her at the time. (Clark Tr. 215:17-216:10.) But Clark also testified that she was a "target" in Cottage 16 because the residents in that unit did not like her because of her "structured style of work," and that JCCA set her up to be in that position, in September 2010. (Clark Tr. 85:14-86:8.)

Clark also testified that JCCA's denial of requested accommodations was discriminatory because of her history of challenging her supervisors. (Clark Tr. 112:16-21.) She also claimed that JCCA accommodated several other employees with alleged disabilities in various ways. (Clark Tr. 112:22-114:2.)

**Clark's Retaliation Claims**

At her deposition, Clark admitted that she never complained about discrimination to anyone at JCCA. (Clark Tr. 248:8-10.) According to Clark, the first instance of retaliation

7

against her by JCCA occurred in June 2011, when JCCA reported an incident involving Clark to OCFS. (Clark Tr. 114:6-17.)

Clark testified that JCCA retaliated against her because a family member had filed a complaint against JCCA.[2] (Clark Tr. 39:3-6.) Clark also testified that JCCA retaliated against her because she was "an outspoken employee and always challenging [her] . . . supervisors . . . ," and "they did not like [her]." (Clark Tr. 39:7-10, 145:18-21.) Finally, Clark testified that her termination was retaliation for taking a second disability leave and for fighting to be removed from Cottage 16 due to safety reasons. (Clark Tr. 217:10-17.)

## ARGUMENT

### JCCA IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS.

Summary judgment under Rule 56 is appropriate when a party fails to make a showing sufficient to establish an element essential to that party's case and on which that party bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). The movant must establish the absence of a genuine issue of material fact, which exists where a reasonable jury could find in the non-movant's favor. *Rojo v. Deutsche Bank*, No. 06 Civ. 13574, 2008 U.S. Dist. LEXIS 94007 at *10 (S.D.N.Y. Nov. 5, 2008), *aff'd*, 487 F. App'x 586 (2d Cir. 2012). While the Court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable" to the non-movant. *Id.* at *11; mere speculation and conjecture are insufficient to defeat summary judgment, *Godfrey v. Eastman Kodak Co.*, No. 89 Civ. 7489, 1991 U.S. Dist. LEXIS 4803, at *14 (S.D.N.Y. Apr. 10, 1991); *Deutsche Asset*

---

[2] Clark's sister, Cedeka Gooden, filed a complaint with the New York City Commission on Human Rights and the U.S. Equal Employment Opportunity Commission against JCCA in June 2010, asserting sex discrimination and

8

*Mgmt., Inc. v. Callaghan*, No. 01 Civ. 4426, 2004 U.S. Dist. LEXIS 5945, at *20-25 (S.D.N.Y. Apr. 7, 2004).

### I.   CLARK'S CLAIM FOR DISABILITY DISCRIMINATION BASED ON HER TERMINATION FAILS AS A MATTER OF LAW.

To state a *prima facie* claim of disability discrimination under the Americans with Disabilities Act ("ADA"), Clark must prove that: (i) she is disabled; (ii) she is otherwise qualified to perform her job; and (iii) she was discriminated against or discharged because of her disability.[3] *See Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir. 1996). Only if Clark successfully makes out a *prima facie* case does the burden then shift to JCCA to proffer – but not prove – a legitimate, non-discriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If JCCA is able to do so, summary judgment is appropriate unless Clark demonstrates that JCCA's proffered reason was merely a pretext for discrimination. *Id.*

Clark's discriminatory discharge claim fails as a matter of law because she cannot even establish a *prima facie* case of discrimination. Moreover, JCCA has proffered an undisputed, legitimate, non-discriminatory reason for Clark's termination – the two OCFS indications against Clark for child abuse – and there is no evidence of pretext.

### A.   Clark Cannot Establish a *Prima Facie* Case of Discriminatory Discharge.

Clark cannot even establish a *prima facie* case of discriminatory discharge because there is no evidence of a causal connection between her alleged disability and her termination. To the

---

retaliation claims under Title VII of the Civil Rights Act and the New York City Human Rights Law, but no claims under the ADA. (Mayo Decl. ¶ 6.)

contrary, it is undisputed that Clark returned to work at JCCA following her leave in August 2011. (Clark Tr. 49:20-23, 60:19-20.) Only upon receiving notice from OCFS of Clark's second indication did JCCA terminate her employment – *after* Clark had returned from leave. (Clark Tr. 252:6-9.)

Moreover, Clark claims her alleged disability commenced in May 2008, when she first tore a ligament in her right shoulder. (Clark Tr. 101:2-12.) Clark's employment was not terminated until *more than three years later*, in 2011. (Clark Tr. 208:10-15.) Meanwhile, Clark admittedly was able to perform the duties of a milieu counselor and was twice permitted to return from injury-related leave. (Clark Tr. 49:20-23, 60:19-20, 82:21-83:9, 95:21-23, 99:23-100:4.) Thus, JCCA did not take any adverse action against Clark based on her alleged disability. Rather, the undisputed evidence shows that JCCA allowed Clark to take leave for her injury and returned her to work thereafter on two separate occasions.

### B. JCCA Terminated Clark's Employment Due to the OCFS Findings Against Her – a Legitimate, Non-Discriminatory Reason – and There Is No Evidence of Pretext.

JCCA terminated Clark because OCFS returned a second indication against her in 2011, after she had been warned in 2009 that another indication would be grounds for termination. (Compl. ¶ E.5; Clark Tr. 46:22-25, 209:20-210:9, 216:11-19; Rice Decl. Exs. F, J.) This basis for Clark's termination is well-documented in the record. (Rice Decl. Exs. H-J; Clark Tr. 207:11-23, 208:16-18, 208:24-209:19.) Indeed, Clark admitted that when she was terminated,

---

[3] For purposes of this motion only, JCCA assumes that Clark is disabled as defined under the ADA.

she had two OCFS indications against her and that this was the only reason she was given for her termination. (Clark Tr. 46:22-25, 210:10-13, 216:11-19.)[4]

JCCA's decision to terminate Clark for the two OCFS indications is, indisputably, a legitimate, non-discriminatory reason for her termination. The NYSDHR came to this very conclusion, which the federal Equal Employment Opportunity Commission adopted. (Rice Decl. Ex. D; Clark Tr. 62:9-15.)

Clark offers only speculation – but no evidence – that this reason was pretextual, claiming that JCCA somehow concocted the 2011 OCFS investigation against her. (Compl. ¶ II.E.4.) But Clark admitted that the resident who was the subject of the investigation complained to her social worker, who was required to report the complaint up the chain to OCFS. (Clark Tr. 159:25-161:8.) Clark, on the other hand, failed to fill out any critical incident report concerning the 2011 incident, despite admitting that she was mandated to do so. (Clark Tr. 156:21-23, 157:12-15, 221:20-222:18.) Thus, the "hard evidence" in the record fails to support – and indeed, contradicts – Clark's "conclusory supposition" that JCCA falsely reported her to OCFS in order to justify her allegedly discriminatory termination. *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 329 (S.D.N.Y. 2009).

Clark's own testimony further belies her claim that her termination was motivated by discriminatory animus. She contends that she was targeted because of her attitude and structured style of working, and because her superiors did not like her. (Clark Tr. 39:7-11, 85:14-86:8, 145:18-21.) Thus, even if Clark could thereby establish that JCCA's proffered reason for Clark's

---

[4] An Administrative Law Judge's later reversal of the indications against Clark is irrelevant, because at the time of JCCA's decision to terminate Clark's employment, Clark admittedly had two indications against her. Moreover, the judge's decision did not reach the merits of the charges against Clark, but rather was based on the fact that OCFS counsel – for reasons that were not explained – declined to produce any evidence to meet OCFS's burden, thereby mooting the hearing. (Clark Tr. 260:13-22, 261:19-263:8, 263:16-18; Rice Decl. Ex. K.) In contrast, OCFS had earlier upheld its 2009 indication against Clark after an Administrative Review, determining that there was a "fair preponderance of evidence to Retain the report." (Clark Tr. 149:9-150:6; Rice Decl. Ex. G.)

termination is pretextual, she cannot show that it is a pretext for *discrimination*, because her own theory has nothing to do with her alleged disability.

Accordingly, JCCA is entitled to summary judgment on Clark's discriminatory discharge claim.

## II.    CLARK'S RETALIATION CLAIM FAILS AS A MATTER OF LAW.

Clark also alleges that her termination was retaliatory under the ADA, and thus must demonstrate: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Widomski v. State Univ. of N.Y. at Orange*, 933 F. Supp. 2d 534, 546 (S.D.N.Y. 2013), *aff'd*, 748 F.3d 471 (2d Cir. 2014). As with her discrimination claim, if Clark can establish the foregoing *prima facie* elements of a retaliation claim, JCCA must proffer a legitimate, non-retaliatory reason for her termination. *Id.* Clark can then defeat summary judgment only if she can show that the proffered reason is pretextual and that retaliatory motive was the real reason.[5] *Id.*

Thus, Clark's retaliation claim fails for the same reason as her discrimination claim: JCCA terminated Clark's employment because of the two OCFS indications against her, and there is no evidence that this legitimate, non-retaliatory reason is pretextual.

But again, Clark cannot even get this far, because she cannot establish a *prima facie* case of retaliation. Specifically, Clark admitted that she never complained of disability discrimination

---

[5] Following the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), under the Age Discrimination in Employment Act ("ADEA"), a growing chorus of case law, including in the district courts in the Second Circuit, have suggested or held that a Plaintiff asserting a retaliation claim under the ADA must establish that retaliation was the "but for" cause of the adverse action. *See Widomski*, 933 F. Supp. 2d at 546 n.9 (collecting cases and agreeing that the similar language of the ADEA and the ADA "cast[s] doubt on the continued applicability of the pre-*Gross* mixed motives ADA case law").

during her employment at JCCA, and that her post-termination complaint to the NYSDHR was the only such complaint that she ever filed with any agency in connection with her employment at JCCA. (Clark Tr. 50:24-51:7, 248:8-10.) Thus, Clark admitted that she did not engage in any protected activity before she was terminated. To the extent Clark's claim is premised upon retaliation for her outspoken attitude, including always challenging her superiors – as she testified at her deposition (Clark Tr. 39:7-10, 145:18-21) – such claim is not actionable under the ADA because it does not relate to any protected activity.[6]

Nor can Clark defeat summary judgment by asserting her sister's claims against JCCA as the basis for her retaliation claim. First, Clark failed to allege this as a basis for retaliation in her Complaint. Second, Clark's sister first initiated an administrative proceeding against JCCA in June 2010, *more than a year* before Clark's termination. (Mayo Decl. ¶ 6.) Such a lengthy interval between the alleged protected activity and Clark's termination negates any retaliation claim. *See Sesay-Harrell v. New York City Dep't of Homeless Servs.*, No. 12 Civ. 925, 2013 U.S. Dist. LEXIS 170160, at *63-64 (S.D.N.Y. Dec. 2, 2013) (granting summary judgment for employer on retaliation claim where alleged retaliation did not occur until six months after protected activity). Third, Clark asserts claims *only* under the ADA (Compl. at 1; Clark Tr. 250:19-25), but her sister did not assert any claims under the ADA (Mayo Decl. ¶ 6). Thus Clark's sister's claims under other statutes do not constitute protected activity *under the ADA*.

For these reasons, Clark's retaliations claims cannot survive summary judgment.

---

[6] And, indeed, if the Court were to adopt the "but for" causation standard for ADA retaliation claims, Clark's own testimony concerning the reasons for her termination would render her claim meritless because she admitted that she was terminated, at least in part, for reasons having nothing to do with her alleged disability or ADA protected activity.

### III. CLARK'S FAILURE TO ACCOMMODATE CLAIM IS MERITLESS.

In order to state a *prima facie* case for failure to accommodate, Clark must show that: (1) she has disability under the ADA; (2) JCCA had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the job at issue; and (4) JCCA has refused to make such accommodations. *See Graves v. Finch Pruyn & Co.*, 353 F. App'x 558, 560 (2d Cir. 2009).[7]

Clark's accommodation claim fails because her own deposition testimony established that Clark did not require any accommodation for her disability. Clark admitted that she was able to do all of the job duties in the JCCA Milieu Counselor Job Description, with the exception of duties that have nothing to do with physical ability (or lack thereof). (Clark Tr. 82:21-83:9.) Clark worked as a milieu counselor for *more than three years* after she claims she first became disabled. (Clark Tr. 101:2-12.) Clark's admissions belie her contradictory allegations that she sought and was denied reasonable accommodations for her alleged disability.

Moreover, Clark admitted that JCCA accommodated her request to be transferred to a different work location in late 2010 or early 2011, *on the same day that she made the request*. (Clark Tr. 76:2-77:15, 90:23-91:2; Mayo Decl. ¶ 7.) While Clark also contends that she sought a transfer back to the switchboard as late as March 2011, she has no documents to reflect such a request. (Clark Tr. 42:3-19) More significantly, there is no evidence that there was a vacant position to which Clark could transfer at the time. In these circumstances, JCCA had no duty to create a new position or "bump" another employee, because this is not a reasonable accommodation under the ADA. *See Jackan v. New York State DOL*, 205 F.3d 562, 566-67 (2d Cir 2000) (granting summary judgment for employer because plaintiff failed to meet burden of

---

[7] Again, solely for purposes of this motion, we assume that Clark had a disability and could perform the essential functions of her position.

14

establishing a vacant position into which she might have been transferred as an accommodation). In any event, Clark's contention that she required such an accommodation is dubious where she admitted that she could perform the duties required of a milieu counselor.

Clark's only other alleged requests for accommodation are time-barred, because, according to Clark's testimony and discovery responses, they occurred more than 300 days prior to Clark's filing of her NYSDHR complaint in this matter. 42 U.S.C. §§ 2000e-5(e)(1), 12117(a). Clark filed her NYSDHR complaint on November 22, 2011. (Rice Decl. Ex. C; Clark Tr. 33:19-35:23.) Thus, to the extent Clark's claim is based on any requests for accommodation prior to January 26, 2011, it is time-barred. Other than the requests noted above – one which JCCA granted, and the other which was unreasonable as a matter of law – Clark's other alleged requests all pre-dated the limitations period, and are not actionable. (Rice Decl. Ex. C; Clark Tr. 33:19-35:23, 39:23-40:5, 42:3-16.)

Finally, Clark's termination in August 2011 plainly had nothing whatsoever to do with any accommodation request. Clark admitted that her doctor did not place any restrictions on her and that she did not request any accommodation upon her return to work. (Clark Tr. 205:5-17.)

Accordingly, JCCA is entitled to summary judgment on Clark's failure to accommodate claim.

## CONCLUSION

For the foregoing reasons, the Court should grant JCCA's motion for summary judgment and dismiss the complaint in its entirety.

Dated:       New York, New York
             August 8, 2014                        Respectfully submitted,

                                                   PROSKAUER ROSE LLP

                                                   By: _____
                                                   Jerold D. Jacobson
                                                   Andrew E. Rice
                                                   PROSKAUER ROSE LLP
                                                   11 Times Square
                                                   New York, NY  10036-8299
                                                   Phone: (212) 969-3000
                                                   Email: jjacobson@proskauer.com
                                                          arice@proskauer.com
                                                   *Attorneys for Defendant*