UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHENIECE CLARK,

                              Plaintiff,

            -v-

JEWISH CHILDCARE ASSOCIATION, INC.,

                              Defendant.

Case No. 12-CV-9372 (KMK)

OPINION & ORDER

Appearances

Sheniece Clark
Bronx, NY
*Pro Se Plaintiff*

Andrew Evan Rice, Esq.
Jerold D. Jacobson, Esq.
Proskauer Rose LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Sheniece Clark ("Plaintiff" or "Clark") brings this Action against

Defendant Jewish Childcare Association, Inc. ("JCCA" or "Defendant"), alleging that Defendant

engaged in discriminatory practices under the Americans with Disabilities Act of 1990, 42

U.S.C. § 12181, et seq. (the "ADA").  Before the Court is Defendant's Motion For Summary

Judgment.  (Dkt. No. 35.)  For the following reasons, Defendant's Motion is granted.

I.  Background

A.  The Facts

1.  Plaintiff's Work at JCCA

JCCA is a not-for-profit organization providing a full range of social and residential

services to children and their families in the New York metropolitan area.  (Def.'s Statement of

Material Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1") ¶ 1 (Dkt. No. 37);

Decl. of Steven Mayo in Supp. of Def.'s Mot. For Summ. J. ("Mayo Decl.") ¶ 2 (Dkt. No. 39).) [1]

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "A *pro se* litigant is not excused from this rule," *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014), and "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. Mar. 12, 2012) (same).  Here, Defendant filed and served its statement pursuant to Rule 56.1, (Dkt. No. 37), and filed and served a statement notifying Plaintiff of the potential consequences of not responding to the motion as required by Local Rule 56.2, (Dkt. No. 40).  Despite this notice, Plaintiff failed to submit a response to Defendant's 56.1 statement of facts.  Accordingly, the Court may conclude that the facts in Defendant's 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in her Memorandum of Law, Plaintiff makes several statements about the facts of this case and appends several documents for the Court's consideration.  (Dkt. No. 46.)  Defendant objects to the use of these documents, in part, on the ground that some of them were not produced in discovery, though Defendant does not identify the unproduced materials.  Recognizing that pro se litigants are entitled to "special solicitude . . . when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the

JCCA's residential treatment center in Pleasantville, New York—the Pleasantville Cottage School ("PCS")—serves children at risk to themselves or others, who cannot live at home. (Def.'s 56.1 ¶ 2; Mayo Decl. ¶ 3.)  The New York State Office of Children and Family Services ("OCFS") is a government agency that, among other things, oversees and regulates child services programs like PCS, including investigations of complaints of child abuse and maltreatment. (Def.'s 56.1 ¶ 3; Mayo Decl. ¶ 5; Decl. of Andrew E. Rice, Esq. in Supp. of Def.'s Mot. For Summ. J. ("Rice Decl.") Ex. A (Sheniece Clark Deposition Transcript ("Clark Tr.")) 120 (Dkt. No. 38).)

Clark began working for JCCA in or around April 2003 as an on-call switchboard operator.  (Def.'s 56.1 ¶ 4; Complaint For Employment Discrimination ("Compl.") ¶ II.E.1 (Dkt. No. 2); Clark Tr. 14, 63.)  Clark became a full-time milieu counselor, or childcare employee, for JCAA in April 2006.  (Def.'s 56.1 ¶ 5; Mayo Decl. ¶ 4; Clark Tr. 63–64.)  As a milieu counselor, Clark worked in the residential cottages at PCS and was responsible for the everyday needs and activities of the residents, including, among other things, the safety, supervision, and

---

Court considers the statements and documents in Plaintiff's opposition papers to determine if there are any material issues of fact based on the evidence in the record.  *See Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a *pro se* plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (internal quotation marks omitted)); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).  For ease of reference, the Court cites to Defendant's 56.1 Statement when the facts are not in dispute.

accountability of the residents, the upkeep of the cottage to which she was assigned, and escorting residents to appointments.  (Def.'s 56.1 ¶ 6; Mayo Decl. ¶ 4; Clark Tr. 79–82; Rice Decl. Ex. E (JCCA Milieu Counselor Job Description).)  Clark stated that she was able to do all of the job duties in the JCCA Milieu Counselor Job Description, except: (i) she attended briefings and treatment conference meetings only as assigned by the supervisor of PCS (rather than all such briefings or meetings); (ii) she and the other milieu counselors did not fix the residents' hair; and (iii) she only took residents out with permission from the supervisor and the consent of the residents' legal guardians.  (Def.'s 56.1 ¶ 7; Clark Tr. 82–83.)  The residents for whom Clark was responsible as a milieu counselor were adolescent females, (Def.'s 56.1 ¶ 8; Clark Tr. 79–80), and Clark worked in several different PCS cottages over the course of her employment as a milieu counselor, (Def.'s 56.1 ¶ 9; Clark Tr. 71, 73–74, 76–78).  Clark stated that she was a "target" in one of the cottages, Cottage 16, because the residents in that unit did not like her because of her "structured style of work," and that JCCA set her up to be in that position in September 2010.  (Def.'s 56.1 ¶ 10; Clark Tr. 85–86.)

## 2.  Plaintiff's Disability Leave and Accommodation Requests

Clark went on leave on two occasions while she was employed at JCCA.  (Def.'s 56.1 ¶ 11; Clark Tr. 95, 99–100.)  From May 3, 2008 through August 2008, Clark took a workers' compensation disability leave due to a torn ligament in her right shoulder.  (Def.'s 56.1 ¶ 12; Compl. ¶ II.E.2; Clark Tr. 96–97.)  Clark first became disabled when she inured her right shoulder on May 3, 2008, (Def.'s 56.1 ¶ 13; Clark Tr. 101), after a JCCA resident hit her with a chair, (Pl.'s Objections & Responses to Def.'s Mot. For Summ. J. ("Pl.'s Mem.") at unnumbered

2 (Dkt. No. 46); Clark Tr. 96).  Dr. Eial Faierman treated Clark's shoulder every six weeks

thereafter and Clark was experiencing increased right shoulder and neck pain for several months.

(Def.'s 56.1 ¶¶ 14–15; Clark Tr. 193–195.)  On March 30, 2011, Clark re-injured her right

shoulder when she attempted to stop a resident from vandalizing her car, (Pl.'s Mem. at

unnumbered 3), and went on leave again until August 9, 2011, (Def.'s 56.1 ¶ 16; Clark Tr. 49,

60, 77, 97–98).  Because of the incident, Plaintiff was "limited [in her] ability to perform certain

manual tasks, lift [her] right arm, turn [her] head, or work."  (Pl.'s Mem. at unnumbered 3.)

Clark states that "[s]tarting on or about March 31 through April 19, 2011, [she] called out each

of [her] scheduled workdays, citing [her] injury as the reason, (*id.*), and she alleges that "JCCA

disputed [her] disability for over five weeks before eventually accommodating [her]," (*id.* at

unnumbered 1).[2]  Clark returned to work in August 2011 because she "felt okay," and it was not

against her doctor's recommendation or wishes.  (Def.'s 56.1 ¶ 17; Clark Tr. 110–111.)  Clark's

doctor did not place any restrictions on her when she returned to work.  (Def.'s 56.1 ¶ 18; Clark

Tr. 205.)

     Clark identified two alleged requests for accommodation that she made related to her

disability in 2008, and stated that in 2010 she reported concerns about unsafe working

---

[2] The documents Plaintiff attaches to her opposition, which the Court cites according to the numbered list that Plaintiff provides, are not consistent with these assertions.  Instead, correspondence between JCCA and Plaintiff shows that JCCA was asking for verification from Plaintiff that she was disabled, particularly in light of Plaintiff's apparent statement that she was "sick and tired of JCCA."  (Pl.'s Mem. Ex. 9.)  Moreover, the note from Clark's doctor indicated that Clark "denie[d] recent injury or trauma," and "present[ed] for a routine follow up," (Pl.'s Mem. Ex. 10 at unnumbered 2), suggesting she did not injure her shoulder during the March 2011 incident.  In any event, there is no dispute that Plaintiff was on medical leave from March 31, 2011, until she voluntarily returned to work on August 9, 2011.

conditions.  (Def.'s 56.1 ¶ 19.)  Clark testified that she sought, as an accommodation for her alleged disability, "[a] change in [her] schedule due to going to physical therapy, [and that] numerous time[s], [she] asked to have [her] schedule change[d] due to the safety of being in certain cottages that [her] supervisor had placed [her] in which [were] dangerous situations due to [her] . . . work-related injury . . . ."  (Def.'s 56.1 ¶ 20; Clark Tr. 39–40.)  Clark also stated that she sought a transfer back to the switchboard as an accommodation, starting in 2008 and again in 2010 and in 2011 before she went on leave after re-injuring her shoulder.  (Def.'s 56. ¶ 21; Clark Tr. 42.)  Clark believes that JCCA's denial of the requested accommodations was discriminatory because of her history of challenging supervisors, and she testified that JCCA accommodated several other employees with alleged disabilities in various ways.  (Def.'s 56.1 ¶¶ 24–25; Clark Tr. 112–114, 205.)

In or around early 2011, Clark requested a transfer out of Cottage 16, and that request was granted that same day with assistance from JCCA Senior Human Resources Associate Michelle Borges ("Borges").  (Def.'s 56.1 ¶ 23; Mayo Decl. ¶ 7; Clark Tr. 76–77, 90–91.)  Clark did not request any accommodation upon her return to work in August 2011.  (Def.'s 56.1 ¶ 26; Clark Tr. 205.)

### 3.  OCFS Indications and Termination of Plaintiff's Employment

According to the New York Social Services Law, OCFS must timely assess a report of maltreatment of a child made by a mandated reporter.  N.Y. Soc. Serv. Law § 424(5-b).  OCFS must determine within sixty days whether the report is "indicated" or "unfounded."  *Id.* § 424(7).  An "indicated report" means "a report made . . . if an investigation determines that some credible

evidence of the alleged abuse or maltreatment exists." *Id.* § 412(7).  In 2009, OCFS "indicated" Clark in a report of abuse and neglect concerning an incident in late April 2009 involving a resident in her care.  (Def.'s 56.1 ¶ 27; Clark Tr. 120–121.)  OCFS interviewed Clark in connection with the April 2009 incident and concluded that Clark had abused the resident in her care.  (Def.'s 56.1 ¶¶ 28–29; Clark Tr. 128.)  JCCA placed a disciplinary notice in Clark's personnel file concerning the 2009 OCFS indication, which stated that it was "a final warning and in the event that another incident of a similar nature occurs, [her] employment [would] be terminated."  (Def.'s 56. 1 ¶ 30; Clark Tr. 135–136; Rice Decl. Ex. F (9/29/09 Disciplinary Action Memorandum).)  In March 2010, OCFS upheld the 2009 indication against Clark after an administrative review, determining that there was a "fair preponderance of evidence to [r]etain the report."  (Def.'s 56.1 ¶ 31; Clark Tr. 149–150; Rice Decl. Ex. G (3/29/2010 Letter from OCFS).)

OCFS indicated Clark for abuse of a resident again in 2011, concerning an incident on March 14, 2011.  (Def.'s 56.1 ¶ 32; Clark Tr. 150.)  Clark states that on the day of the incident she "and two co-workers escorted two residents to another part of the JCCA facility for disciplinary purposes."  (Pl.'s Mem. at unnumbered 2.)  The resident "threw a punch" at one of her co-workers, "who in turn restrained the resident by initiating a 'therapeutic hold'" and Clark "assisted [her co-worker] with the hold, was bitten by the resident, and had to receive medical treatment at Westchester Medical Center's Emergency Room."  (*Id.* at unnumbered 2–3.)  According to Clark, the other two co-workers involved in the incident were not indicated.  (*Id.* at unnumbered 4.)  Clark did not complete a critical incident report concerning the March 14, 2011

incident, despite the fact that it was her responsibility to document any such incident.  (Def.'s 56.1 ¶ 33; Clark Tr. 156–157, 221–222.)  According to Clark, a JCCA social worker Ms. Evensen ("Evensen") and the JCCA Director of Campus Life, Ms. Fazio ("Fazio") reported the March 14, 2011 incident to OCFS after the resident-victim reported it to Evensen on June 1, 2011.  (Def.'s 56.1 ¶ 34; Clark Tr. 159–161.)  Clark acknowledged that upon learning of the incident, Evensen was mandated to report the incident to OCFS.  (Def.'s 56.1 ¶ 35; Clark Tr. 161.)

In a letter dated August 3, 2011, OCFS advised JCCA that it indicated Plaintiff for abuse and maltreatment of a child concerning the March 2011 incident.  (Pl.'s Mem. Ex. 21.)  In a letter dated the same day, JCCA informed Clark that OCFS had indicated the report of maltreatment, explaining that this meant "some credible evidence was found to substantiate the allegations that the child(ren) named in the report ha[d] been abused or maltreated."  (*Id.* at Ex. 20.)

On August 11, 2011, JCCA terminated Clark's employment.  (Def.'s 56.1 ¶ 36; Clark Tr. 208.)  Clark had already returned from her leave when she was notified of her termination.  (Def.'s 56.1 ¶ 37; Clark Tr. 252.)  JCCA informed Clark that she was terminated because of the second OCFS indication against her.  (Def.'s 56.1 ¶ 39; Compl. ¶ II.E.5; Clark Tr. 209–210, 216; Rice Decl. Ex. J. (Letter from Kay Turner to Sheniece Clark).)  Other documents reflect that Clark was terminated from employment because of the OCFS findings against her.  (Def.'s 56.1 ¶ 40; Clark Tr. 207–209; Rice Decl. Ex. H (Notice of Termination of Employment); Rice Decl. Ex. I (8/11/11 email from Michelle Borges to Pauline Sukhan).)  JCCA claims that it never told

8

Clark that there was any reason for her termination other than the OCFS findings.  (Def.'s 56.1 ¶ 41; Clark Tr. 210, 216.)  Clark claims that after she was terminated, Borges "admitted to [her] that management was 'upset' that she took a second disability leave."  (Pl.'s Mem. at unnumbered 5.)  At her deposition, however, Plaintiff testified that Borges informed her management was upset that she took a second disability leave on April 14, 2011 and August 5, 2011, the latter of which was six days before her termination.  (Reply Decl. of Andrew E. Rice, Esq. in Supp. of Def.'s Mot For Summ. J. ("Rice Reply Decl.") Ex. A ("Clark Tr.") 187–188 (Dkt. No. 43).)

On November 19, 2009 and in 2011 after her termination, Clark requested that OCFS expunge the indications against her.  (Def.'s 56.1 ¶ 42; Clark Tr. 253; Pl.'s Mem. Ex. 3; *id.* Ex. 10.)  The OCFS Administrative Law Judge found that OCFS did not meet its burden to prove that Clark committed the alleged acts of neglect in 2009 or 2011 because counsel for OCFS, prior to a hearing scheduled on January 6, 2012, informed the judge that OCFS would not present any evidence at the hearing.  (Def.'s 56.1 ¶¶ 43–33; Clark Tr. 261–263; Rice Decl. Ex. K (OCFS Decision After Hearing).)  There is nothing in the record explaining why OCFS did not present its evidence.

On November 22, 2011, Clark filed a complaint with the New York State Division of Human Rights ("NYSDHR") against JCCA.  (Def.'s 56.1 ¶ 46; Rice Decl. Ex. C (Clark NYSDHR Complaint); Clark Tr. 33–35.)  The NYSDHR dismissed Clark's complaint, finding that "[t]he evidence gathered during the course of the investigation [was] not sufficient to support that [Clark] was discriminated against by [JCCA] based on her disability (shoulder

9

injury) and/or retaliation," and concluded that Clark "was terminated as a result of having two (2) child abuse investigations against her." (Def.'s 56.1 ¶¶ 48–49; Rice Decl. Ex. D (NYSDHR Determination and Order After Investigation).) Clark's NYSDHR complaint was cross-filed with the U.S. Equal Employment Opportunity Commission, which adopted the NYSDHR's findings and issued Clark a dismissal and notice of right to sue in September 2012. (Def.'s 56.1 ¶ 50; Clark Tr. 62.)

Clark testified that the first instance of retaliation against her by JCCA occurred in June 2011, when JCCA reported an incident involving Clark to OCFS. (Def.'s 56.1 ¶ 57; Clark Tr. 114.) Clark also alleges that JCCA retaliated against her because a family member had filed a complaint against JCCA. (Def.'s 56.1 ¶ 58; Clark Tr. 39.) Specifically, Clark's sister, Cedeka Gooden, filed a complaint with the New York City Commission on Human Rights and the U.S. Equal Employment Opportunity Commission against JCCA in June 2010, asserting sex discrimination and retaliation claims under Title VII of the Civil Rights Act and the New York City Human Rights Law. (Def.'s 56.1 ¶ 59; Mayo Decl. ¶ 6.) Additionally, Clark alleges that JCCA retaliated against her because she was "an outspoken employee and [was] always challenging [her] . . . supervisors . . ." and "they did not like her." (Def.'s 56.1 ¶¶ 60–61; Clark Tr. 39, 145.) Clark also claims that her termination was retaliation for taking a second disability leave and for fighting to be removed from Cottage 16 due to safety reasons. (Def.'s 56.1 ¶ 62; Clark Tr. 217.)

B.  Procedural History

Plaintiff filed the Complaint on December 21, 2012.  (Dkt. No. 2.)  The Court granted

Plaintiff's request to proceed in forma pauperis on January 23, 2013.  (Dkt. No. 4.)  Pursuant to a

Scheduling Order dated July 7, 2014, (Dkt. No. 33), Defendant filed its Motion For Summary

Judgment and accompanying papers on August 8, 2014, (Dkt. Nos. 35–39).  The Court received

Plaintiff's opposition papers on September 12, 2014, but they were not filed until March 6,

2015.[3]  (Dkt. No. 46.)  Defendant filed its reply memorandum of law and supporting declarations

on October 3, 2014.  (Dkt. Nos. 42–44.)

## II.  Discussion

### A.  Applicable Law

#### 1.  Standard of Review for Summary Judgment

Summary judgment shall be granted where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper*

*Saddle River v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

---

[3] Defendant acknowledges that it received Plaintiff's opposition papers, which were postmarked on September 16, 2014.  (Reply Mem. of Law in Supp. of Def.'s Mot. For Summ. J. ("Def.'s Reply") 10 (Dkt. No. 42).)

(same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute

exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

*Aurora Commercial Corp. v. Approved Funding Corp.,* No. 13-CV-230, 2014 WL 1386633, at

*2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on

the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go

to the trier of fact on an essential element of the nonmovant's claim," in which case "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. PriceWaterhouse

Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks

omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to

create more than a 'metaphysical' possibility that [her] allegations were correct; [s]he need[s] to

'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v.

County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere

allegations or denials contained in the pleadings," *Walker v. City of New York*, No. 11-CV-2941,

2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing,

inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary

judgment is properly supported by documents or other evidentiary materials, the party opposing

summary judgment may not merely rest on the allegations or denials of his pleading . . . .")).

   "On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law."  *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).  At

summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess

whether there are any factual issues to be tried."  *Brod,* 653 F.3d at 164 (internal quotation marks

omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No.

1358, No. M21-88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same).  Thus, a court's

goal should be "'to isolate and dispose of factually unsupported claims.'"  *Geneva Pharm. Tech.*

*Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477

U.S. 317, 323–24 (1986)); *see also Schatzki v. Weiser Capital Mgmt., LLC*, No. 10-CV-4685,

2013 WL 6189465, at *14 (S.D.N.Y. Nov. 26, 2013) (same).  Finally, the Second Circuit has

instructed that when a court determines a motion for summary judgment, "special solicitude"

should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988);

*Mercado v. Div. of N.Y. State Police*, No. 96-CV-2355, 2001 WL 563741, at *7 (S.D.N.Y. May

24, 2001) (same), and the court construes "the submissions of a *pro se* litigant . . . liberally" and

interprets them "to raise the strongest arguments that they *suggest*," *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

## 2.  Wrongful Termination Under the ADA

The ADA "prohibits discrimination by covered entities, including private employers,

against qualified individuals with a disability."  *Heyman v. Queens Vill. Comm. for Mental*

*Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (internal

quotation marks omitted).  Specifically, the ADA provides that no covered employer "shall

discriminate against a qualified individual on the basis of disability . . . in regard to . . . [the] discharge of employees."  42 U.S.C. § 12112(a).

To evaluate a claim for discrimination under the ADA, the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.  *See Heyman*, 198 F.3d at 72; *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir. 1998).  "Under *McDonnell Douglas*, [the] plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination."  *Heyman*, 198 F.3d at 72 (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).  "The burden of production then shifts to [the] defendant[], who must offer through the introduction of admissible evidence a non-discriminatory reason for [its] actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action."  *Id.*  If the defendant meets this burden, the plaintiff "then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."  *Id.* (internal quotation marks omitted).

"To establish a prima facie case of discrimination under the ADA, [a] plaintiff must show by a preponderance of the evidence that (1) his [or her] employer is subject to the ADA; (2) he [or she] was disabled within the meaning of the ADA; (3) he [or she] was otherwise qualified to perform the essential functions of his [or her] job, with or without reasonable accommodation; and (4) he [or she] suffered adverse employment action because of his [or her] disability."  *Id.*;

14

*see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000) (same). Establishing the prima facie case "is not a demanding burden[,]" and, "[o]nce [the burden is] met, [the plaintiff] creates a presumption that the employer discriminated against the [plaintiff] in an unlawful manner." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998); *see also Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09-CV-2583, 2012 WL 1079943, at *14 (S.D.N.Y. Mar. 30, 2012) (same).  The Second Circuit has held that the "failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge 'because of' his [or her] disability." *Parker*, 204 F.3d at 332.

At the second step, "the defendant must produce evidence" which supports a "clear and specific" explanation for the termination, and which, "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (internal quotation marks omitted); *see also Avella v. Valley Cent. Sch. Dist.*, No. 09-CV-923, 2011 WL 6338805, at *7 (S.D.N.Y. Dec. 19, 2011) (same).  "If the defendant proffers such a reason, the presumption of discrimination drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (alterations and internal quotation marks omitted).

Finally, at the third step, the plaintiff "must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's [disability] was the real reason for the discharge." *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996); *see also Kinsella v.*

*Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003) (holding that a plaintiff "must show, using evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason, that the defendant's proffered reason was pretextual" (citation and internal quotation marks omitted)). "The plaintiff retains the ultimate burden of persuasion," but "[s]ummary judgment is appropriate only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Id.* (alterations and internal quotation marks omitted).[4]

---

[4] The Court notes that Plaintiff's burden of persuasion is not clear.  In *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), the Supreme Court held that plaintiffs alleging violations of the Age Discrimination in Employment Act ("ADEA") were required to "prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer decision." *Id.* at 177–78.  The Supreme Court explained that the "motivating factor" language in Title VII permits plaintiffs to advance claims by demonstrating that discrimination formed part of the motive (the so-called "mixed motive" standard), whereas the ADEA's "because" language requires the "but-for" causation standard.  *Id.*

    In the Second Circuit, prior to *Gross*, courts applied the "mixed-motive analysis available in the Title VII context" to ADA claims, *see Parker*, 204 F.3d at 336, but given that the ADEA and ADA use similar "because" language in the relevant provisions, it is not clear whether this framework survives *Gross*.  *See Bolmer v. Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010) (noting that "it is questionable whether Title II discrimination claims can proceed on a mixed-motive theory after the Supreme Court's decision in [*Gross*] where the Court held that the [ADEA] does not authorize a mixed-motive age-discrimination claim," but ultimately not deciding the issue); *Saviano v. Town of Westport*, No. 04-CV-522, 2011 WL 4561184, at *6 (D. Conn. Sept. 30, 2011) (holding that "the but-for causation standard enunciated by the Supreme Court in *Gross* applies in the ADA retaliation context"); *Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 343 n.40 (S.D.N.Y. 2010) (applying the mixed motive standard and noting that although recent "Supreme Court case law may indicate that the Court would disapprove of this [mixed-motives] causation standard, and would instead mandate a higher 'but-for' standard . . . as the Supreme Court has not yet discussed causation specifically with respect to the ADA, this court will follow controlling Second Circuit jurisprudence").  Other circuits have issued more definitive statements adopting the 'but-for' *Gross* standard for ADA claims.  *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) ("The ADEA and the ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for' cause of the employer's adverse decision.  The same standard

### 3.  Failure to Accommodate Under the ADA

A defendant violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).  Like a termination claim, discussed above, this claim is also subject to the *McDonnell Douglas* three-step burden-shifting framework.  *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); *see also Snowden v. Trs. of Columbia Univ.*, No. 12-CV-3095, 2014 WL 1274514, at *3 (S.D.N.Y. Mar. 26, 2014); *Reyes v. Krasdale Foods, Inc.*, 945 F. Supp. 2d 486, 491 (S.D.N.Y. 2013).  To make out a prima facie failure-to-accommodate claim under the ADA, a plaintiff must demonstrate that:

> (1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his [or her] disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan*, 711 F.3d at 125–26 (internal quotation marks omitted); *see also Golf v. N.Y.C. Dep't of Fin.*, No. 13-CV-2865, 2014 WL 1651946, at *5 (S.D.N.Y. Apr. 23, 2014) (same).

---

applies to both laws." (citing *Gross*, 557 U.S. at 176)); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) (applying *Gross* to the ADA by holding that "in the absence of any additional text bringing mixed-motive claims within the reach of the [ADA], the statute's 'because of' language demands proof that a forbidden consideration—here, the employee's perceived disability—was a 'but for' cause of the adverse action"); *see also Palmquist v. Shinseki*, 689 F.3d 66, 74 (1st Cir. 2012) (applying *Gross* to the causation analysis resulting from the "because" language of the Rehabilitation Act's retaliation provision).

    The Court need not resolve this question, because, as explained below, Plaintiff has failed

4.  Retaliation Under the ADA

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  The Second Circuit has identified four elements for a prima facie case of retaliation:  "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted).

"Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  At the prima facie stage, a plaintiff's burden is "de minimis."  *Id.*  (citations omitted).  Once a plaintiff establishes the prima facie case, the burden shifts to defendant "to articulate a legitimate, non-retaliatory reason for the challenged employment decision."  *Id.* at 721; *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (describing the burden shifting framework for a summary judgment claim in a Title VII suit).  "If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to

---

to present evidence sufficient to meet either burden.

18

conclude that the employer's explanation is merely a pretext for impermissible retaliation."
*Treglia*, 313 F.3d at 721 (internal quotation marks omitted).[5]

B.  Analysis

1.  Discrimination Claim

a.  Prima Facie Case

Plaintiff alleges that JCCA discriminated against her by wrongfully terminating her

employment because of her disability.  (Compl. ¶ II.E.)  For the purposes of the instant Motion,

JCCA does not dispute that it is an employer subject to the ADA, that Plaintiff was disabled

within the meaning of the statute, or that Plaintiff was otherwise qualified to perform the

essential functions of her job with or without reasonable accommodation.  Rather, Defendant

contests the fourth element of a prima facie case of discrimination, arguing that "there is no

evidence of a causal connection between [Plaintiff's] alleged disability and her termination."

(Mem. of Law in Supp. of Def.'s Mot. For Summ. J. ("Def.'s Mem.") 9 (Dkt. No. 36).)

The fourth element of a prima facie case "necessarily incorporates an inquiry as to

whether the employer had notice of the plaintiff's disability."  *McCoy v. Morningside at Home*,

No. 11-CV-2575, 2014 WL 737364, at *4 (S.D.N.Y. Feb. 25, 2014) (collecting cases).  Here,

there is no dispute that JCCA was aware of Plaintiff's disability because she was injured on the

job and took medical leave related to her disability twice during her employment.  (Def.'s 56.1

¶ 11.)  Nor can there be any dispute that Plaintiff suffered an adverse employment action when

---

[5] The Court notes again that Plaintiff's burden of persuasion is not entirely clear in light
of the Supreme Court's decision in *Gross*.  For the reasons explained herein, however, the Court
need not resolve this issue.

she was terminated.  *See id.* at *5 (explaining that to "establish an adverse employment action, a plaintiff must demonstrate that she suffered from a materially adverse change in the terms, privileges, duration[,] and conditions of employment," which includes "a termination of employment" (internal quotation marks omitted)).  The relevant question, therefore, is whether Plaintiff presented sufficient evidence that her termination was "because of" her disability to satisfy her "minimal burden" of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework.

Plaintiff states that after she was terminated, Borges told her that management was "upset" that Plaintiff took a second disability leave.  (Pl.'s Mem. at unnumbered 5.)  Defendant correctly points out that Plaintiff testified during her deposition that Borges made these comments on April 14, 2011 and August 5, 2011, the latter date of which was six days *before* Plaintiff was terminated.  (Reply Mem. of Law in Supp. of Def.'s Mot. For Summ. J. ("Def.'s Reply") 6–7 (Dkt. No. 42); Clark Tr. 187–89.)  Because Plaintiff cannot "create a genuine issue of material fact by . . . contradicting [her] own prior testimony in a deposition," *Mulero v. City of Bridgeport*, No. 07-CV-1206, 2010 WL 2585040, at *4 (D. Conn. June 22, 2010) (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)), *aff'd sub nom. Mulero v. City of Bridgeport Dep't of Educ.*, 448 F. App'x 129 (2d Cir. 2011); *cf. In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014) (explaining that "as a general matter, plaintiffs may not create material issues of fact by submitting affidavits that dispute their own prior testimony"), the Court considers only Plaintiff's deposition testimony, in which she

20

states that Borges made these remarks on April 14, 2011 and August 5, 2011, and not after her termination.

In considering whether remarks are probative of discriminatory intent to satisfy the casual requirement of a prima facie case of discrimination, the Second Circuit has explained that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination," whereas the "more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)*, abrogated on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177–78 (2009).  To determine whether a remark is probative, courts consider four factors:

> (1) who made the remark (i.e. a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e. whether it was related to the decision-making process).

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).  Defendant argues that Borges's remarks are "stray" remarks based on these factors and, therefore, they cannot support an inference of discrimination.  First, Defendant notes that "Borges neither made the decision to terminate [Plaintiff's] employment nor had the authority to make such a decision independently." (Def.'s Reply Mem. 6; Reply Decl. of Seven Mayo in Supp. of Def.'s Mot. For Summ. J. ("Mayo Decl.") ¶ 2 (Dkt. No. 44).)  The Court acknowledges that it is unclear on the current record what role, if any, Borges had in advising management in its decision to terminate

Plaintiff.  Plaintiff does not present *any* evidence that Borges played a role in the adverse

employment action.  *See Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 275 (E.D.N.Y.

2013) (explaining that "although [the declarant] was not the ultimate decision maker regarding

the selection of the [d]irector of [s]tores, [the] [p]laintiff ha[d] presented evidence that [the

declarant] played a role in the selection process").  Nevertheless, Borges was speaking about the

feelings of JCCA's management.  Although it is not clear on the record before the Court that the

"management" to which Borges referred was the same "management" that terminated Plaintiff's

employment, or how she knew about "management's" view, drawing all reasonable inferences in

Plaintiff's favor, the Court will assume for the purposes of the instant Motion that the

"management" to which Borges referred made the decision.  This factor, then, weighs in favor of

finding the remarks probative of discrimination.

Next, Defendant argues that the remarks are stray because "[t]he first alleged remark

occurred approximately four months before [Plaintiff's] termination, during which time

[Plaintiff] was permitted to return to work . . . . [a]nd the second alleged remark, while closer in

time to [Plaintiff's] termination, likewise preceded [her] return to work, which was an

intervening event between the alleged remark and her termination."  (Def.'s Reply 6–7.)  "There

is no bright line rule regarding the length of time that renders an allegedly discriminatory remark

too attenuated to constitute evidence of discrimination."  *Sethi v. Narod*, 12 F. Supp. 3d 505, 540

(E.D.N.Y. 2014).  One court has recently recognized that "[d]istrict courts in [the Second]

Circuit have found that a three-month lapse between alleged discriminatory statements and an

adverse employment action is too long a gap to find the remark probative of discrimination."  *Id.*

22

at 540–41 (collecting cases); *cf. Ellis*, 975 F. Supp. 2d at 276 (explaining that "courts in [the Second] Circuit have generally found that a five month lapse between an allegedly discriminatory statement and an adverse employment action is too long a gap to find the remark probative of discrimination without some other evidence that the remark was related to the adverse employment action").  Accordingly, Borges's first remark, standing alone, is likely too distant in time to the adverse employment action to support an inference of discrimination, as it was made nearly four months before Plaintiff's termination.  Borges's second remark, however, was made just days before Plaintiff's termination (and just days before JCCA was advised by OCFS about Plaintiff's indication for misconduct during the March 14, 2011).  *See Baron v. Advanced Asset & Prop. Mgmt. Solutions, LLC*, 15 F. Supp. 3d 274, 283 (E.D.N.Y. 2014) (finding the fact that a remark was made approximately six weeks prior to the plaintiff's termination supported that a "reasonable trier of fact could infer that [the] defendant discriminated against [the] plaintiff because of his disability").  Moreover, although Defendant suggests otherwise, the fact that Plaintiff returned to work for several days before her termination does not make the remarks irrelevant.  *Cf. Pathan v. Connecticut*, 19 F. Supp. 3d 400, 426 (D. Conn. 2014) (explaining that the "remarks preceded the examination-correcting incident which triggered [the] [p]laintiff's termination" and "[a] jury could reasonably find that these remarks revealed a discriminatory mind set on the part of the speakers which caused them, perhaps unconsciously, to view the circumstances of the exam incident . . . in a manner adverse to [the] [p]laintiff, and consistent with . . . discriminatory animus").  Thus, the timing of the second remark also weighs in favor of finding that there is evidence probative of discrimination.

23

As to the third factor, the remarks are not obviously discriminatory.  The remarks directly reference Plaintiff's leave, which Defendant does not contest was the result of her disability.  *See Baron*, 15 F. Supp. 3d at 283 (explaining "the alleged comment in referring to [the] plaintiff as 'sick' directly references [the] plaintiff's disability"); *cf. Greene v. Enlarged City Sch. Dist. of City of Middletown*, No. 12-CV-4545, 2014 WL 1688133, at *5 (S.D.N.Y. Apr. 29, 2014) (explaining that the comment at issue was "remote and oblique" because it did "not specifically reference [the plaintiff's] disability" but rather was "a statement that refer[red] far more directly to the long history of discord between [the plaintiff] and her supervisors").  Nevertheless, when Borges made her second remark, Plaintiff had returned from leave, without any restrictions related to her disability, or any indication that she would request another leave.  The remarks, therefore, are not clearly discriminatory and this factor weighs slightly against a finding of discriminatory intent.

Turning to the fourth factor, the Court agrees with Defendant that there is no evidence that the remarks were made in the context of the decision making process.  From Plaintiff's deposition testimony, it is clear that the remark made in April 2011 was in reference to Plaintiff's request for a second disability leave and the documentation that JCCA required to approve the leave, not her termination.  (Clark Tr. 187–89.)  The Court does not find anything in the record that explains the context of the second remark.  There is nothing about the context of the remarks, therefore, that suggests discriminatory intent.  *See Vogel v. CA, Inc.*, 12-CV-990, 2014 WL 4414540, at *14 (D. Conn. Sept. 8, 2014) (finding it relevant that the plaintiff had not demonstrated that the contested remark was "uttered in the context of the decision-making

24

process relating to the adverse employment actions of which [the plaintiff] complain[ed]"); *cf. Henry*, 616 F.3d at 149–50 (explaining that even where a supervisor involved in an adverse action used a discriminatory phrase around the time of the alleged failure to promote, the remark was of low probative value because it "was not related to the decision-making process").

In the end, two of the four factors slightly favor Plaintiff, and two slightly favor Defendant.  Because "none of the factors should be regarded as dispositive," the Court finds that "[o]verall the remarks allow for an inference of discrimination," *Pagan v. Morrisania Neighborhood Family Health Ctr.*, No. 12-CV-9047, 2014 WL 464787, at *5 (S.D.N.Y. Jan. 22, 2014) (holding that the remark of a decision-maker asking why the plaintiff did not retire given his illness, among other things, gave rise to an inference of discrimination), especially in light of Plaintiff's "minimal burden" at the prima facie stage of the *McDonnell Douglas* framework. Plaintiff, therefore, has proffered evidence to satisfy her minimal burden at the first stage.

### b.  Non-Discriminatory Reason

Turning to the second step of the burden-shifting analysis, the Court concludes that Defendant has proffered strong evidence of a non-discriminatory reason for Plaintiff's termination.  Defendant claims that it "terminated [Plaintiff] because OCFS returned a second indication against her in 2011, after she had been warned in 2009 that another indication would be grounds for termination."  (Def.'s Mem. 10.)  Indeed, the evidence supports Defendant's claim.  Plaintiff was indicated in 2009, following a report of abuse and neglect concerning an incident in late April 2009 involving a resident in her care, and OCFS ultimately concluded that Plaintiff had abused the resident.  (Def.'s 56.1 ¶¶ 27–29; Clark Tr. 120–121, 128.)  Following

25

OCFS's indication, in a letter dated September 29, 2009, JCCA placed Plaintiff on six months' probation and stated that "[t]his letter should be considered a final warning and in the event that another incident of a similar nature occurs, your employment will be terminated."  (Rice Decl. Ex. F.)

OCFS then indicated Plaintiff a second time on August 3, 2011 for abuse of a resident concerning an incident on March 14, 2011, (Def.'s 56.1 ¶ 32; Clark Tr. 150; Pl.'s Mem. Exs. 20–21), which means, as noted, that OCFS "determin[ed] that some credible evidence of the alleged abuse or maltreatement exist[ed]," N.Y. Soc. Serv. Law § 412(7).  By letter dated August 12, 2011, a representative of JCCA notified Plaintiff that her "position as milieu counselor . . . was terminated effective August 11, 2011 due to the OCFS findings."  (Rice Decl. Ex. J.)  Other documents reflect that Clark was terminated from employment because of the OCFS findings against her.  (Def.'s 56.1 ¶ 40; Clark Tr. 207–209; Rice Decl. Ex. H (Notice of Termination of Employment); Rice Decl. Ex. I (8/11/11 email from Michelle Borges to Pauline Sukhan).)  In light of this evidence supporting that Plaintiff's termination was due to the OCFS's second indication, Defendant has satisfied its burden at step two of the *McDonnell Douglas* framework.

### c.  Pretext

Because Defendant proffers a legitimate reason for Plaintiff's termination, the burden shifts to Plaintiff to demonstrate that the reason Defendant offers is "merely a pretext for discrimination."  *Heyman*, 198 F.3d at 72.  To meet this burden, which "higher than that which applied for analyzing the prima facie case," *Geoghan v. Long Is. R.R.*, No. 06-CV-1435, 2009 WL 982451, at *21 (E.D.N.Y. Apr. 9, 2011) (italics omitted), a plaintiff "may rely on evidence

presented to establish her prima facie case, [but] . . . [i]t is not sufficient . . . for a plaintiff merely

to show that she satisfies the . . . minimal requirements of a prima facie case," *Galimore v. City*

*Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 281–82 (S.D.N.Y. 2009) (italics and

internal quotation marks omitted).  "Instead, the key is whether there is sufficient evidence in the

record from which a reasonable trier of fact could find in favor of [the] [p]laintiff on the ultimate

issue, that is, whether the record contains sufficient evidence to support an inference of

discrimination."  *Id.* at 282.

  Plaintiff claims that "JCCA caused [the] second report to be filed against [her]."  (Pl.'s

Mem. at unnumbered 4.)  To support this contention, Plaintiff suggests that there was something

improper about Defendant's reporting of the alleged incident of abuse 79 days after it allegedly

occurred.  Plaintiff claims that "[a]ll three JCCA employees present for the events of March 14[,

2011] were 'mandated reporters' . . . [who] can be criminally and civilly liable for intentionally

failing to report when they reasonably suspect that a child is being abused or mistreated."  (*Id.*)[6]

In other words, Plaintiff suggests that if the employees present on March 14, 2011 thought that

Plaintiff abused the resident in her care, they would have reported it immediately.  Nevertheless,

Plaintiff does not contest Defendant's representation that the resident-victim reported the

incident to Evensen and Fazio on June 1, 2011, and Evensen accordingly reported the incident to

OCFS on the same day, as was mandated by law.  (Clark Tr. 160–61.)  There is no evidence,

then, that JCCA "caused" the OCFS indication, but rather that the abuse was reported because of

the resident-victim's disclosure to Evensen and Fazio.  Moreover, OCFS did not share its

---

  [6] Plaintiff was one of these three employees.

conclusion to indicate Plaintiff with JCCA until August 3, 2011, (Pl.'s Mem. at Ex. 21), thus the delay between the initial report of the incident and JCCA's decision to terminate Plaintiff was not the result of any inexplicably delayed activity by JCCA.  Indeed, JCCA terminated Plaintiff within days of learning about Plaintiff's second indication from OCFS.

The fact that the second indication against Plaintiff was ultimately dismissed because OCFS informed the administrative law judge that it would not present any evidence at the hearing concerning the matter does not, without more, support Plaintiff's allegation that JCCA caused the indication.  The administrative law judge dismissed the indication after Plaintiff was terminated and, therefore, Defendant had no reason to question the validity of the indication at the time that it terminated Plaintiff.  (Def.'s 56.1 ¶ 42; Clark Tr. 253.)  Indeed, the September 29, 2009 letter stated that Plaintiff's employment would be terminated "in the event that another incident of a similar nature occurs."  (Rice Decl. Ex. F.)  The resident-victim's allegations of abuse and OCFS's initial indication satisfy this criterion, despite the fact that the indication was ultimately dismissed.

Plaintiff also suggests that Defendant's decision to terminate her employment demonstrates that she was treated differently from at least one other JCCA employee, Georgio Harper ("Harper").  (Pl.'s Mem. at unnumbered 5.)  Specifically, Plaintiff states that JCCA allowed Harper to return to work after having only one of his two indications reversed.  (*Id.*)  A plaintiff may show pretext "'by demonstrating that similarly situated employees outside the protected class were treated differently.'"  *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 261 (S.D.N.Y. 2009) (quoting *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 249

28

(S.D.N.Y. 2001).  To be similarly situated, "other employees . . . must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it."  *Bennett*, 136 F. Supp. at 250 (internal quotation marks omitted).

Here, there are differentiating and mitigating circumstances that distinguish Harper's discipline, or lack thereof, from Plaintiff's discipline.  First, as Defendant points out, "JCCA had good reason to treat [Plaintiff] and Harper differently," because "OCFS amended and withdrew its indication against Harper . . . [after] ma[king] the substantive determination that Harper was no longer an indicated subject," whereas "[Plaintiff's] indications were amended on a technicality having nothing to do with the merits."  (Def.'s Reply 8.)  Second, there is nothing in the record to suggest that Harper was warned after his first indication that similar allegations would result in the termination of his employment.  Because Plaintiff cannot point to an employee whose indication was dismissed in a similar posture as Plaintiff's indication, or after an employee had been warned that a similar incident would result in his or her dismissal, there is no evidence that Plaintiff was treated differently than other JCCA employees.  *See Rivera v. Orange County*, No. 10-CV-9134, 2013 WL 812016, at *7 (S.D.N.Y. Mar. 5, 2013) (holding that the plaintiff failed to meet his burden to show that the defendants' non-discriminatory reasons for firing him were pretext because "[t]o the extent [the] plaintiff cite[d] [other] employees as comparators, he fail[ed] to show how he and they were similarly situated in all material respects" (internal quotation marks omitted)), *appeal dismissed* (Aug. 28, 2013)).

Even assuming, however, that Harper was similarly situated to Plaintiff, Plaintiff has failed to produce sufficient evidence that she was terminated because of her disability.  "Whether summary judgment is appropriate . . . depends upon the strength of the plaintiff['s] prima facie case, the probative value of the proof that the [defendant's] explanation is false, and any other evidence that supports the [defendant's] case."  *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir. 2001) (internal quotation marks omitted).  While the Court finds that Borges's remarks were sufficient to meet Plaintiff's prima facie burden, "the Court does not find that this evidence suffices to create a material issue of fact as to whether Defendant's legitimate reasons for [terminating] Plaintiff were 'more likely than not' a pretext for [disability] discrimination" for several reasons.  *Galimore*, 641 F. Supp. 2d at 285.  First, "while temporal proximity of the comments and the adverse action alone may still be sufficient at the prima facie stage, it is not sufficient at the pretext stage."  *Verga v. Emergency Ambulance Serv., Inc.*, No. 12-CV-1199, 2014 WL 6473515, at *5 (E.D.N.Y. Nov. 18, 2014) (alterations and internal quotation marks omitted); *see also Hardekopf v. Sid Wainer & Son*, No. 02-CV-3251, 2004 WL 2199502, at *7 (S.D.N.Y. Sept. 29, 2004) (same).  The fact that Borges's second remark occurred only a few days before Plaintiff's termination, then, is insufficient to establish discriminatory intent.  Second, as discussed above, Plaintiff presented no nexus between Borges's remarks and Defendant's decision to terminate her employment.  The April 2011 remark was made in the context of Plaintiff's request for leave, and Plaintiff offers no information about the context for the August 2011 remark.  Third, while the remarks related to Plaintiff's disability leave, they do not suggest discriminatory animus about Plaintiff's disability.  Indeed, JCCA did not terminate

30

Plaintiff's employment until after she returned from leave and after hearing about the OCFS's second indication, her doctor did not place any restrictions on her when she returned to work, and there is no evidence that Plaintiff could not perform her job due to her disability.  (Def.'s 56.1 ¶ 18; Clark Tr. 205.)  Finally, Borges's statements are "fewer in number than in cases where courts have held such comments sufficient to permit an inference of discrimination in employment" even in the context of a plaintiff's initial burden to establish a prima facie case of discrimination.  *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 379 (S.D.N.Y. 2013) (collecting cases).  Accordingly, although Borges's comments establish a weak prima facie case of discrimination, the Court finds that they do not create a genuine issue of fact as to whether Defendant's legitimate reason for terminating Plaintiff's employment was a pretext for discrimination.  *See Lizardo*, 270 F.3d at 103–04 (determining that the plaintiffs did not meet their burden to establish pretext because, among other things, the plaintiffs' prima facie case was weak); *Gailmore*, 641 F. Supp. 2d at 286 (finding that although remarks were sufficient to meet the plaintiff's prima facie burden, they did not demonstrate pretext because "[t]he comments were not made in connection with the decision-making process, and [were] otherwise not sufficiently pervasive or severe enough . . . to raise a triable issue of fact as to whether [the] [d]efendant's stated reasons for terminating [the] [p]laintiff's employment were pretextual" (footnote omitted)); *Gorman v. Hughes Danbury Optical Sys.*, No. 93-CV-2163, 1998 WL 327174, at *2 (D. Conn. June 17, 1998) ("Although [the] evidence may have been sufficient to meet the de minimus burden of establishing a prima facie case, no reasonable jury could conclude from it that age was the real reason for [the] plaintiff's termination."); *Hawkins v. Astor*

31

*Home for Children*, No. 96-CV-8778, 1998 WL 142134, at \*6 (S.D.N.Y. Mar. 25, 1998) (explaining that evidence of a minimal prima facie case cannot, without more, defeat a motion for summary judgment).

### 2.  Reasonable Accommodation Claim

As explained above, to establish a prima facie case of a failure-to-accommodate claim under the ADA a plaintiff must demonstrate that:

> (1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his [or her] disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan*, 711 F.3d at 125–26 (internal quotation marks omitted).  For the purposes of the instant Motion, Defendant does not dispute that Plaintiff had a disability within the meaning of the ADA.  (Def.'s Mem. 14 n.7.)  Moreover, as noted above, Defendant had notice of Plaintiff's disability.  The Court, therefore, analyzes whether Plaintiff sustains her burden under the third and fourth elements of a prima facie case.

In her Complaint, Plaintiff alleges that Defendant refused to accommodate her disability, but does not explain what accommodations she sought from Defendant or how Defendant otherwise failed to accommodate her.  (Compl. II.A.)  Plaintiff testified, however, that she asked Defendant to change her schedule because she needed to attend physical therapy for her injury in 2008, and because "being in certain cottages . . . [was] dangerous . . . to [her] . . . work-related injury."  (Def.'s 56.1 ¶ 20; Clark Tr. 39–40.)  Plaintiff also claims that she sought a transfer back to the switchboard as an accommodation in 2008, 2010, and 2011.  (Def.'s 56.1 ¶ 21–22; Clark Tr. 42.)  Finally, in her Memorandum of Law, Plaintiff states that "JCCA disputed [her]

disability for over five weeks before eventually accommodating [her]."  (Pl.'s Mem. at unnumbered 1.)  The Court addresses these claims in turn.

First, to the extent that Plaintiff claims she was denied a reasonable accommodation in 2008, specifically a change in her schedule to attend physical therapy or removal from the cottages to which she was assigned, these claims are time-barred.  "As a predicate to filing suit under the ADA, a plaintiff must first file a timely charge with the U.S. Equal Employment Opportunity Commission (the 'EEOC') or a state or local agency capable of granting relief." *Flum v. Dep't of Educ. of the City of N.Y.*, No. 12-CV-1123, 2015 WL 109935, at *4 (S.D.N.Y. Jan. 6, 2015) (citing 42 U.S.C. § 2000e-5(e)(1)).  In New York, "in which there is a designated state or local agency with jurisdiction to consider discriminatory employment claims, the limitations period for filing charges with the EEOC is . . . 300 days."  *Dawson v. N.Y.C. Transit Auth.*, No. 13-CV-6593, 2014 WL 5343312, at *4 (S.D.N.Y. Oct. 21, 2014); *see also Hernandez v. City of New York*, No. 11-CV-6644, 2015 WL 321830, at *15 (S.D.N.Y. Jan. 23, 2015) ("[T]o maintain a suit under the ADA, an aggrieved employee must first file a charge with the EEOC within 300 days of the alleged unlawful employment practice." (citing 42 U.S.C. § 2000e-5(e)(1))); *cf. Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("A plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e-5(e)(1)).  While under the continuing violation doctrine, a "plaintiff may bring suit based on conduct that occurred outside of the statute of limitations period, provided that the conduct is part of specific discriminatory policies or practices," *Early v. Wyeth Pharm., Inc.*, 603 F. Supp. 2d 556, 571 (S.D.N.Y. 2009) (citing *Cornwell v. Robinson*, 23

33

F.3d 694, 704 (2d Cir. 1994)), the Supreme Court has held that the doctrine does not apply to "discrete acts of discrimination or retaliation that occur outside the statutory time period" because discrete acts do not converge into "a single unlawful practice for the purposes of timely filing," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 111 (2002); *see also Early*, 603 F. Supp. 2d at 572 (same).

"Claims not raised in an EEOC complaint [or with the appropriate state agency] . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006). "The Second Circuit has recognized three situations in which a claim may be found to be 'reasonably related': (1) 'where the conduct complained of would fall within the scope of the EEOC [or state agency] investigation which can reasonably be expected to grow out of the charge of discrimination'; (2) 'where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC [or state agency] charge'; and (3) 'where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC [or state agency] charge.'" *Flum*, 2015 WL 109935, at *4 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)) (some internal quotation marks omitted)).

Here, Plaintiff filed her complaint with the NYDHR on November 22, 2011. (Rice Decl. Ex. C.) Accordingly, any claim that JCCA failed to accommodate Plaintiff in 2008 is time-barred unless it is "reasonably related" to the claims Plaintiff filed. The second situation for whether a claim is reasonably related is clearly inapplicable, as Plaintiff does not allege retaliation for filing a NYDHR or EEOC charge. The first and third situations are also

inapplicable.  In her complaint with the NYDHR, Plaintiff stated that she was discriminated against when she was "out on disability due to [a] work related injury[,]" and checked, among other boxes, the box that Defendant denied her an accommodation because of her disability.  (*Id.* at 5–6.)  Under the section titled "description of discrimination [] for *all complaints*," Plaintiff described her disability leave due to her March 31, 2011 injury.  (*Id.* at 7.)  Plaintiff did not reference her disability or disability leave in 2008.  Indeed, Plaintiff did not reference any discriminatory conduct prior to 2011.  There is nothing to support, then, that "the conduct [Plaintiff] complained of would fall within the scope of the EEOC investigation."  *Flum*, 2015 WL 109935, at *4 (internal quotation marks omitted).  Tellingly, the NYDHR's Determination and Order After Investigation does not mention Plaintiff's first disability leave or any requests or alleged discrimination associated with it.  (*See* Rice Decl. Ex. D.)  Moreover, with the exception of checking the box that Defendant denied her an accommodation, Plaintiff does not mention any allegations of JCCA's failure to accommodate her disability.  Accordingly, there is no basis to conclude that the third situation applies because Plaintiff's NYDHR complaint did not "allege[] . . . incidents of discrimination carried out in precisely the same manner alleged in the . . . charge."  *Flum*, 2015 WL 109935, at *4 (internal quotation marks omitted).  Any allegation, therefore, that JCCA failed to accommodate Plaintiff in 2008 is time-barred.  *See Baez v. New York*, No. 12-CV-8229, 2014 WL 4988237, at *7 (S.D.N.Y. Sept. 29, 2014) (finding that the plaintiff's allegations that occurred prior to the three hundred day filing deadline were time-barred, whereas those allegations that were not prior to the deadline were timely); *Belton v. City of New York*, No. 12-CV-6346, 2014 WL 4798919, at *4 (S.D.N.Y. Sept. 26, 2014) (same).

Turning to Plaintiff's requests to be transferred to the switchboard, "[t]he ADA defines 'reasonable accommodation' as including but not limited to 'job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 217 (2d Cir. 2001) (second alteration in original) (quoting 42 U.S.C. § 12111(9)(B)). Accordingly, Plaintiff's request to be transferred qualifies as a type of reasonable accommodation. However, "[a]n ADA plaintiff does not satisfy her burden to identify a potential accommodation merely by reciting the formula that her employer could have reassigned her[,] [but rather,] she must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97–98 (2d Cir. 2009). Here, Plaintiff has "presented no evidence that, at or about the time of her termination, there existed a vacant position at [JCCA] for which she was qualified," including a position as a switchboard operator. *Id.* at 99. Therefore, Plaintiff's claim that Defendant failed to accommodate her by allowing her to transfer to the switchboard is insufficient to meet her prima facie burden.

Finally, the Court construes Plaintiff's claim that Defendant "disputed [her] disability for over five weeks before eventually accommodating [her]," as a claim that Defendant constructively denied her request for disability leave through delay. (Pl.'s Mem. at unnumbered 1.) Plaintiff states that although JCCA knew of her March 30, 2011 injury at the time that it happened, Defendant "disputed that [she] had a disability for over five weeks" and "finally approved [her] disability leave on or about May 12, 2011." (*Id.* at 3.) As a threshold matter, a

reasonable accommodation includes requests for leave due to a plaintiff's disability. *See Bernadotte v. N.Y. Hosp. Med. Ctr. Of Queens*, No. 13-CV-965, 2014 WL 808013, at *9 (E.D.N.Y. Feb. 28, 2014). To succeed on a claim that an employer has constructively denied the employee's request for a reasonable accommodation through delay "courts in the Second Circuit have consistently held that a plaintiff is required to provide evidence that the delay was motivated by the employer's discriminatory intent, as opposed to mere negligence." *Logan v. Matveevskii*, No. 10-CV-9247, 2014 WL 5025953, at *21 (Sept. 29, 2014) (collecting cases).

Here, Plaintiff points to no evidence that the purported five-week delay in granting her disability leave was motivated by discriminatory intent. Instead, Plaintiff states that after her injury on March 30, 2011, from March 31, 2011 through April 19, 2011, she "called out each of [her] scheduled workdays, citing [her] injury as the reason," (Pl.'s Mem., at unnumbered 3), and "returned to work on August 9, 2011," (*id.*) Indeed, in a letter appended to Plaintiff's opposition papers dated April 14, 2011, JCCA stated that Clark "last reported to work on March 31, 2011," had "since called out on several days stating that [she] had no transportation to get to work," and informed Borges on April 6, 2011 "that [she] [was] sick and tired of JCCA." (Pl.'s Mem. Ex. 9.) The letter explained that on April 12, 2011, Borges "inquired as to [Clark's] status and asked why [she] [had] not reported to work and that [her] position with JCCA was in jeopardy." (*Id.*) Clark responded that she was ill. Borges requested a note from Clark's doctor, but, according to the letter, Clark had not submitted any documentation of her illness. (*Id.*) The letter advised that it constituted Clark's "final warning to turn in a physician's note by 5pm, Monday April 18, 2011 substantiating [her] absence . . . or [her] employment [would] be terminated." (*Id.*) Clark

submitted a doctor's note dated April 19, 2011, in which Plaintiff's doctor stated under the subsection titled "[h]istory of present illness" that "[t]he patient present[ed] for a routine follow up . . . denie[d] recent injury or trauma, . . . [and was] not working and has not worked since 3/31/11 due to pain." (Pl.'s Mem. Ex. 10 at unnumbered 2.) Plaintiff's doctor concluded that she had "right shoulder sprain status post right shoulder arthroscopy." (*Id.*) In a letter dated April 27, 2011, JCCA informed Plaintiff that it needed further documentation or information about Plaintiff's disability to determine whether Plaintiff was entitled to paid sick benefits, requested that Plaintiff provide the information within 14 days of the receipt of the letter, and advised that until it received the information it could not determine Plaintiff's eligibility for paid sick leave. (*Id.* at unnumbered 1.) The evidence, then, supports that the delay in granting Plaintiff's medical leave was due to her failure to submit documentation of her disability despite JCCA's requests, and therefore Plaintiff's claim that Defendant's delay in approving her disability leave constructively denied her request is without merit. *Cf. Dollar v. Brooklyn Hosp. Ctr.*, No. 10-CV-4807, 2011 WL 5117603, at *4 (E.D.N.Y. Oct. 24, 2011) (finding no discriminatory animus where the defendant requested that the plaintiff "follow reasonable rules requiring him to update [the defendant] regarding his medical condition"); *Mayo v. Columbia Univ.*, No. 01-CV-2002, 2003 WL 1824628, at *6–7 (S.D.N.Y. Apr. 7, 2003) (rejecting the plaintiff's claim that the defendant's reason for terminating his employment was pretext because the plaintiff failed to submit progress reports on his condition and other documentation that the employer required to maintain his "return to work agreement" and explaining that "the plaintiff had a history of unplanned absences and a failure to communicate with his supervisors").

38

3.  Retaliation Claim

a.  Prima Facie Case

As noted above, the Second Circuit has identified four elements for a prima facie case of retaliation:  "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Weixel*, 287 F.3d at 148 (internal quotation marks omitted).  Plaintiff alleges that JCCA retaliated against her because (1) her sister filed a complaint with the EEOC against JCCA in June 2010 alleging sex discrimination and retaliation under Title VII of the Civil Rights Act ("Title VII") and the New York City Human Rights Law ("NYCHRL"); (2) she was an outspoken employee who challenged her supervisors; and (3) she took a second disability leave.

Plaintiff cannot establish a prima facie case based on her claim for retaliation for the first two reasons because neither reason is a "protected activity" under the ADA.  A plaintiff engages in a "protected activity" under the ADA if she "has opposed any act or practice made unlawful *by this chapter*" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this chapter*."  42 U.S.C. § 12203(a) (emphases added); *see Alford v. Turbine Airfoil Coating & Repair, LLC*, No. 12-CV-7539, 2014 WL 1516336, at *11 (S.D.N.Y. Apr. 17, 2014) (same).  Plaintiff does not allege that she participated in her sister's sex discrimination and retaliation claim.  Moreover, her sister's claim does not arise under the ADA, but rather Title VII and the NYCHRL and therefore is not a protected

activity within the meaning of the ADA.  Plaintiff has pointed to no cases, and the Court has found none, where the filing of a complaint by a relative under a different anti-discrimination statute satisfies Plaintiff's burden to show that she was "engaged in a protected activity" for the purposes of a retaliation claim pursuant to the ADA.  Similarly, Plaintiff's claim that she was discriminated against because she was an outspoken employee who challenged her supervisors fails under the first prong because Plaintiff does not state that she was outspoken about or challenged her supervisors on practices that were unlawful under the ADA.  *See Garcia v. Coll. of Staten Is.*, No. 11-CV-2252, 2012 WL 3930448, at *7 (E.D.N.Y. July 31, 2012) (dismissing retaliation claim because the plaintiff's complaints about the lack of professionalism on the defendant's staff was not protected activity), *adopted by* 2013 WL 3929985 (E.D.N.Y. Sept. 10, 2012); *Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263, 271 (S.D.N.Y. 2001) (granting motion to dismiss a complaint because the plaintiff's "outspoken ways" and protests against the defendant were generalized complaints and were not alleged to be based on a status that was protected) (internal quotation marks omitted), *aff'd*, 40 F. App'x 619 (2d Cir. 2002).

In contrast to Plaintiff's first two proffered reasons for retaliation, Plaintiff's claim that JCCA retaliated against her for taking disability leave satisfies the first element because "[r]equesting a reasonable accommodation of a disability is an ADA protected activity," *Rodriguez v. Atria Senior Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Weixel*, 287 F.3d at 149); *see also Bernadotte*, 2014 WL 808013, at *9 (same), and, as noted above, a reasonable accommodation includes requests for leave due to a plaintiff's disability, *see Bernadotte*, 2014 WL 808013, at *9.  Moreover, JCCA knew that Plaintiff was involved in

40

protected activity because she requested disability leave from JCCA.  Finally, Plaintiff's

termination constitutes as an adverse decision taken against Plaintiff.  The Court turns, then, to

whether Plaintiff meets the fourth element of the prima facie case.

"[T]he causal connection needed for proof of a retaliation claim can be established by

indirectly showing that the protected activity was closely followed in time by the adverse

action."  *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation marks

omitted); *accord Clark v. Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that

temporal proximity alone may suffice to establish causation where proximity is very close); *see*

*also Hopkins v. New England Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 254 (D. Conn.

2013) (same).  Here, Plaintiff was terminated several days after she returned from her second

disability leave.  Accordingly, the close proximity between Plaintiff's return from disability

leave and her termination satisfies the causal element to establish a prima facie case of

retaliation.  *See Terry v. County of Cayuga*, No. 11-CV-1296, 2013 WL 5464395, at *4

(N.D.N.Y. Sept. 30, 2013) (holding that where the plaintiff was terminated on the day she

returned from disability leave "[s]uch close temporal proximity" gave rise to "an inference of

retaliation"); *Hopkins*, 985 F. Supp. 2d at 254 (holding that evidence that the plaintiff was told

"she could no longer work at [her job] five days after her complaint at the meeting, coupled with

her termination three months later . . . [was] sufficient to allow a reasonable trier of fact to find a

close temporal relationship between [the] protected activity and the subsequent retaliation");

*Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 351 (W.D.N.Y. 2012) (holding that a

warning "coming approximately one month after plaintiff's final complaint . . . [was] sufficiently

proximate to satisfy the inference of causation and the prima facie case of retaliation") (italics omitted).

### b.  Non-Retaliatory Reason

Defendant claims that Plaintiff was terminated because of the second OCFS indication. As discussed in detail above, Defendant offers factual support for this contention and meets its burden of establishing a non-retaliatory reason for terminating Plaintiff's employment to satisfy its burden at the second stage of the *McDonnell Douglas* analysis.

### c.  Pretext

"Once the first two steps of the burden-shifting test have been satisfied, 'the *McDonnell Douglas* framework disappears,' and 'the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason for the allegedly retaliatory conduct is a pretext.'" *Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 384 (E.D.N.Y. 2010) (alterations omitted) (quoting *Reg'l Econ. Cmty. Action Program, Inc. (RECAP) v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002), *superseded by statute on other grounds,* ADA amendments of 2008, Pub. L. No. 110-325, 122 Stat. 3553; *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  "The plaintiff may do this by presenting additional evidence, or by relying on the evidence that supported the plaintiff's prima facie case." *Id.*  However, although "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . without more, such temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext."  *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *Martel v. New*

*England Home Care, Inc.*, No. 09-CV-1412, 2014 WL 3687738, at *16 (D. Conn. July 22, 2014) (same).  "Indeed, a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact."  *El Sayed*, 627 F.3d at 933.

Here, the temporal proximity between Plaintiff's return from disability leave and her termination, while sufficient to satisfy her prima facie burden of establishing retaliation, does not, without more, satisfy her ultimate burden of persuasion.  Plaintiff offers explanations of why JCCA's legitimate reason is pretext.  Specifically, Plaintiff claims that JCCA "caused" the second indictment to be brought against her and even if the indication was legitimate, JCCA treated her differently than Harper.  As discussed above, however, all of the evidence contradicts this assertion.  Evensen and Fazio reported abuse allegations against Plaintiff because a resident in Plaintiff's care informed them of the incident and they were mandated to do so under law, a fact that Plaintiff admits.  Moreover, Plaintiff has not shown that she was similarly situated as Harper, for the reasons discussed above.  *See Pedi v. Gov't Emps. Ins. Co.*, No. 11-CV-5977, 2013 WL 3929634, at *6 (S.D.N.Y. July 31, 2013) (rejecting the plaintiff's pretext argument because "[n]either of the two employees identified by [the] plaintiff as being treated differently was actually similarly situated to [the] plaintiff"), *aff'd*, 569 F. App'x 38 (2d Cir. 2014).  In sum, Plaintiff has produced no evidence from which a jury could rationally find that Defendant retaliated against her for taking disability leave.

III.  Conclusion

For the reasons stated above, Defendant's Motion For Summary Judgment is granted.

The Clerk of the Court is respectfully requested to terminate the pending motion, enter judgment

for Defendant, and close the case.  (*See* Dkt. No. 35.)

SO ORDERED.

Dated: March  *3/* , 2015
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

44